**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HUMBERTO TRUJILLO,<br><br>        Plaintiff,<br>v.<br><br>ROCKLEDGE FURNITURE LLC d/b/a ASHLEY FURNITURE HOMESTORE,<br><br>        Defendant. | No.<br><br>Jury Trial Demanded |

**COMPLAINT**

Plaintiff Humberto Trujillo, through his attorneys, Stowell & Friedman, Ltd., hereby files his Complaint against Rockledge Furniture LLC d/b/a Ashley Furniture HomeStore, and in support states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff's claims arise under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634 and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq*.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state-law claim under the Illinois Human Rights Act pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), in that the Defendant employed Plaintiff in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

4. Defendant Rockledge Furniture LLC is a Wisconsin LLC and a wholly owned subsidiary of Ashley Furniture Industries, Inc., a Wisconsin corporation. Rockledge Furniture LLC owns several retail outlets branded as "Ashley Furniture HomeStores" in the Midwest, including the stores at which Plaintiff worked.

5. Rockledge Furniture LLC's registration filing with the Illinois Secretary of State states that it operates under the "assumed names" of "Ashley Furniture Outlet," "Ashley Sleep," and "Ashley Furniture HomeStore – Rockledge." Plaintiff worked in stores owned by Rockledge Furniture LLC that were operated under the "Ashley Furniture HomeStore" name. This Complaint will refer to Defendant Rockledge Furniture LLC as "Ashley."

6. Plaintiff Humberto Trujillo ("Plaintiff" or "Trujillo") is a 51-year old man who resides in this District. He worked as a store manager at Ashley from June 2007 through March 2016.

## FACTUAL ALLEGATIONS

7. Plaintiff has built a successful career as a manager of retail furniture stores.

8. In June 2007, Ashley hired Plaintiff to manage its Arlington Heights, Illinois location.

9. Subsequently, Ashley assigned Plaintiff to "open," and serve as manager of, three new Ashley Furniture HomeStores in Northern Illinois. After Plaintiff successfully opened and managed Ashley stores in Schaumburg and Broadview, Illinois, Ashley assigned him to open another new store in Burbank, Illinois. Plaintiff worked at the Burbank location until he was unlawfully terminated in March 2016.

10. In late 2015, Ashley underwent a corporate realignment. As a result of the realignment, new leadership took charge of Ashley's Illinois, Wisconsin, and Indiana stores, including the Burbank HomeStore where Plaintiff worked.

11. In December 2015, the new Midwestern leadership team held a major corporate meeting. Plaintiff attended that meeting along with other store managers and Ashley leadership. At the meeting, the new leadership team emphasized that Ashley should focus on hiring millennials for management positions.

12. For example, the new President in charge of the Midwestern market, Chris Caprio ("Caprio"), pointed to the Florida market as an example to be followed, because most new managers hired there were millennials. He explained that in Florida, by focusing on hiring younger people, Ashley had successfully changed the "look" of the store's managers.

13. Caprio then turned the floor over to Gene Lunger, ("Lunger"), Ashley's Executive Vice President of Retail Operations for the entire U.S. market. Lunger told a story of going out to a restaurant with some buddies and encountering a young server who "came across as someone we would hire." Lunger said he gave the server his card, in hopes that she would apply for a managerial position at Ashley.

14. A young recruiter spoke next. She spoke of how she has gone to universities and hired great young talent, and how they as managers need to get out and do the same.

15. The new leadership made clear that these "suggestions" about focusing on recruiting millennials were not optional. They also made clear that they were not devoted only to hiring millennials; the plan was to fast-track younger people for promotion and advancement.

16. After the presentation, Plaintiff had conversations with other attendees, including his fellow store managers. The group expressed concern that Ashley was pushing them to hire

3

young people who would be groomed to take their jobs. The managers were fearful that they would bring younger people on, get them up to speed, and then Ashley would replace them. They wondered if the new leadership was sending them a message that they were too old for their jobs.

17. After the meeting in December 2015, Ashley implemented its plans to focus on hiring millennials. Store managers received e-mails from Human Resources ("HR") with guidance for managing and recruiting millennials. They were scheduled to go to colleges and universities to recruit.

18. Around the same time, in late 2015, Ashley transferred a young sales manager (the "Sales Manager") to the Burbank store. She reported to Plaintiff. DeLynn Frigo ("Frigo"), Ashley's HR Director, informed Plaintiff that the Sales Manager was an "HR nightmare" and had problems at her previous store assignment.

19. The Sales Manager's inappropriate behavior continued at the Burbank store. She regularly failed to perform her basic job responsibilities, like training new associates and working with associates to improve their sales techniques. Plaintiff contacted Frigo to report his concerns with the Sales Manager's job performance.

20. In February 2016, the Sales Manager's behavior deteriorated even further. On or around Friday, February 5, she was scheduled to open the store. She texted Plaintiff in the middle of the night saying that she would not open the store that morning, and she didn't care if she lost her job. As a result of the Sales Manager's refusal to come to work, Plaintiff was forced to open the store on his day off. Plaintiff complained to Ashley management and to HR about the Sales Manager's intolerable behavior. Plaintiff said that any employee, especially a manager, who abandons their job without an explanation should not be able to keep it. Employees who

report to Plaintiff told Plaintiff that the Sales Manager was unable to report to work because she had been drinking with other Ashley employees until early that morning. The following day, the Sales Manager came into the store and told Plaintiff that she had "some stuff" happening and needed time off. She said she had spoken with Frigo who had approved her time off without consulting Plaintiff, her manager.

21. On or around Thursday, February 18, Ashley had a company awards dinner that was to be attended by all store managers, sales managers and award recipients as well as their significant others. The following morning, there was a monthly managers' meeting that was to be attended by all store managers, sales managers and the store design team. The Sales Manager said she could not attend the managers' meeting because a shot of tequila she had taken the previous night "did her in." During the February managers' meeting, Frigo continued to emphasize the importance of recruiting younger employees.

22. Frigo then announced the new promotions that were to take place later that month. To Plaintiff's surprise, she announced that the Sales Manager would be promoted to a training position at the Bolingbrook store. Plaintiff was shocked to learn that, instead of reprimanding the Sales Manager for repeatedly abandoning her responsibilities, Ashley promoted her instead.

23. A few days later, the Sales Manager again was scheduled to open the store, and again failed to do so. This time, she did not even contact Plaintiff in advance. Plaintiff again complained to Ashley management, and learned that the Sales Manager had resigned.

24. The following day, Plaintiff sent an e-mail about retrieving the store keys from the Sales Manager she still had access to the store. He never got a response. He then learned from the operations manager that the Sales Manager was still active in Ashley's email system, despite having resigned. Plaintiff sent another email about the Sales Manager's continuing access

5

to Ashley's email system and received no answer from anyone. Plaintiff felt something strange was happening.

25. The very next day, Plaintiff was scheduled for his day off. Plaintiff learned that HR was in the Burbank store conducting a store audit. That "store audit" was extremely unusual. The "store audit" was used to falsely and pretextually justify Plaintiff's firing – despite his excellent job performance – in March 2016.

26. In reality, Plaintiff was fired was because of his age, as a result of Ashley's effort to drive its older managers out of the company in favor of younger millennials, and in retaliation for Plaintiff's complaints about a younger employee, the Sales Manager.

27. Plaintiff's termination was part of a pattern and practice of adverse employment actions taken against managers in the protected age class. Further, during Plaintiff's tenure at Ashley, he had a track record of objective success. In particular, he had successfully opened and managed three different Ashley HomeStores. Based on that success, Plaintiff believed he was qualified and deserving of a promotion to Regional Director. He applied for a Regional Director position at least three times, but never got the promotion.

28. On one particular occasion, Plaintiff had a screening interview with Frigo. She said that Plaintiff was ineligible for the Regional Director position because he did not have experience running multiple stores. He pointed out that the job description did not mention any such requirement, and that other managers had recently been promoted to Regional Director without any such experience. He did not receive any direct answer to these points. When, after the interview, he searched the computer system for the Regional Director job description, he was surprised to find out that it had disappeared. He did not receive a further interview.

6

29. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue.

30. Plaintiff has suffered emotional distress, loss of enjoyment of life and lost wages as a result of Defendant's unlawful treatment of him.

## COUNT I

### AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF ADEA, 29 U.S.C. § 621 *et seq.*

31. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

32. The ADEA, 29 U.S.C. § 623(a), makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

33. The ADEA, 29 U.S.C. § 623(d), also prohibits retaliation against an employee for opposing practices made unlawful under the ADEA.

34. At all relevant times, Plaintiff was performing his job according to Defendant's reasonable and legitimate job expectations.

35. Defendant's termination of Plaintiff, and its refusal to promote him, as described above, were adverse employment actions taken because of Plaintiff's age or in retaliation for his protected activity, in violation of the ADEA.

36. Defendant would not have taken these adverse employment actions but for the Plaintiff's age or his decision to engage in protected activity.

37. As a direct and proximate result of Defendant's unlawful age discrimination and retaliation alleged in this Complaint, Plaintiff has suffered and continues to suffer damages.

38. Defendant's violation of the ADEA was a willful violation in that Defendant knew that its conduct violated the ADEA and/or Defendant acted with reckless disregard of the ADEA.

## COUNT II

### AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT, 775 ILCS 5/1-101 *et seq.*

39. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

40. Defendant is an employer within the meaning of the Illinois Human Rights Act.

41. Plaintiff was an employee of Defendant as defined by the Illinois Human Rights Act.

42. 775 ILCS 5/2-102 makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of age.

43. 775 ILCS 5/6-101 makes it unlawful for an employer to retaliate against any individual because that individual opposed conduct which he believes in good faith to be unlawful discrimination

44. Plaintiff engaged in protected activity by complaining to Defendant about age discrimination and retaliation.

45. Defendant took adverse employment action against Plaintiff for engaging in this protected activity.

46. Defendant subjected Plaintiff to discriminatory and retaliatory age-based conduct in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*

47. Defendant willfully and maliciously engaged in this unlawful discrimination and retaliation against Plaintiff.

48. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Humberto Trujillo respectfully requests that this Court enter judgment in his favor and against Defendant Rockledge Furniture LLC, d/b/a Ashley Furniture Homestore, as follows:

a. Declare that Defendant's acts and conduct are unlawful and violate the ADEA and the IHRA, and the anti-retaliation provisions of those laws;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

d. Award Plaintiff compensatory damages, including but not limited to lost future wages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

e. Award Plaintiff liquidated damages under the ADEA due to Defendant's willful violation of the ADEA;

f. Award Plaintiff punitive damages under the IHRA;

g. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements, as provided by law; and

h. Award Plaintiff such other make whole equitable, injunctive, and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

                                               Respectfully Submitted,

                                               */s/ Linda D. Friedman*
                                               Attorney for the Plaintiff
                                               STOWELL & FRIEDMAN, LTD.

Linda D. Friedman
Matthew J. Singer
**STOWELL & FRIEDMAN, LTD.**
303 W. Madison
Suite 2600
Chicago, Illinois 60606
Phone: 312.431.0888
Fax:    312.431.0228